UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BERNARDO GUADARRAMA AYALA,<br><br>　　　　Petitioner,<br><br>v.<br><br>BRIAN HENKEY, Field Office Director of Enforcement and Removal Operations, Salt Lake City Immigration and Customs Enforcement Field Office; KENNETH PORTER, Director of the Boise Immigration and Customs Enforcement Field Sub-Office; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; PAMELA BONDI, U.S. Attorney General; MIKE HOLLINSHEAD, Sheriff of Elmore County,<br><br>　　　　Respondents. | Case No. 1-25-cv-00682-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Bernardo Guadarrama Ayala's Petition for Habeas Relief Under 28 U.S.C. § 2241 (Dkt. 1) and his Motion for Temporary Restraining Order (TRO) (Dkt. 2). For the reasons explained below, the Court grants the petition and denies the motion for TRO as moot.

## INTRODUCTION

This case is one of many cases in this District brought by noncitizens without legal status, challenging the lawfulness of the Government's new policy mandating detention during the pendency of removal proceedings. The Honorable B. Lynn Winmill recently addressed this new

policy in *Elias v. Knight*, No. 1:25-cv-00594-BLW, 2025 WL 3228262 (D. Idaho Nov. 19, 2025), and several other cases.[1] As Judge Winmill explained in those cases, the Supreme Court has recognized two distinct statutory schemes for detaining noncitizens. *Id.* at *1.

Section 1225 of Title 8 of the United States Code governs the detention of noncitizens seeking admission into the United States. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). With limited exceptions, detention under § 1225(b)(2) is mandatory and individuals detained under § 1225(b)(2) are not entitled to a bond hearing. While § 1225(b)(2) authorizes the Government to detain certain aliens *seeking admission into the country*, § 1226(a) "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added). In other words, § 1226(a) sets out the "default rule" for noncitizens already present in the country. *Id.* at 288.

Despite this authority, the Board of Immigration Appeals decided in *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025), that noncitizens who are present in the United States

---

[1] The Court's decision in *Elias v. Knight*, No. 1:25-cv-00594-BLW, 2025 WL 3228262 (D. Idaho Nov. 19, 2025), is one of numerous decisions issued by the Honorable B. Lynn Winmill on November 19, 2025, which address the Government's new detention policy (*see* Dkt. 1 at ¶ 8) (citing cases). These decisions are "substantially identical." *Elias*, 2025 WL 3228262, at *2 n.3. This Court finds the decisions in those cases persuasive in resolving this case. For brevity, however, this Court cites only to *Elias*.

**MEMORANDUM DECISION AND ORDER – 2**

without admission are subject to § 1225(b)(2) regardless of whether they were already in the country for several years. Since that decision, the Department of Homeland Security has been detaining noncitizens who have resided in the United States for years under § 1225(b)(2) rather than § 1226(a). As a result, these detainees are subject to mandatory detention without a bond hearing. As Judge Winmill notes, an "overwhelming majority" of federal courts have held that § 1225(b)(2) does not apply to noncitizens who have been detained after living in the United States for years. *Elias*, 2025 WL 3228262, at *1 n.1 (citing cases); (*see also* Dkt. 1 at ¶ 47) (citing cases). As in *Elias*, at issue here is whether § 1225(b)(2) mandates Petitioner Bernardo Guadarrama Ayala's detention without a bond hearing.

## BACKGROUND

Petitioner is a twenty-seven-year-old Mexican national, who entered the United States without inspection almost ten years ago in 2016 and who has lived in the United States since then (Dkt. 1 at ¶¶ 1, 18, 24). On December 3, 2025, Immigration and Customs Enforcement (ICE) agents arrested Petitioner as he left his home to go to work (*id.* at ¶ 1). At the time, Petitioner was residing in Caldwell with his two minor children and their mother, who is Petitioner's partner (*id.* at ¶ 25).

The Government charged Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted, placed him in removal proceedings under 8 U.S.C. § 1229a, and is detaining him under § 1225(b)(2) without a bond hearing at the Elmore County Detention Center in Mountain Home (Dkt. 7-1 at ¶¶ 3, 11–13). The day after ICE arrested Petitioner, he filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and the All Writs

Act, 28 U.S.C. § 1651 (Dkt. 1 at ¶ 14). Petitioner alleges his mandatory detention under § 1225(b)(2) violates his due process rights (*id.* at ¶¶ 32–33).

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Id.* The Constitution also guarantees every person in the United States due process of law, including persons who are not United States citizens. *Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003) ("The Supreme Court has long recognized that deportable aliens are entitled to constitutional protections of due process.") (citing *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903)); *see also Zadvydas v. Davis*, 533 U.S. 678, 695 (2001).

## ANALYSIS

**A.   Jurisdiction**

As an initial matter, the Government challenges this Court's jurisdiction. Generally, federal courts have jurisdiction to hear habeas corpus petitions from noncitizen detainees who claim their detention violates the "Constitution or laws . . . of the United States." 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 688. The Government, however, argues that 8 U.S.C. § 1252 bars Petitioner's claims because they "arise from his detention during removal proceedings, which stem from the Attorney General's decision to commence such proceedings" (Dkt. 7 at 6).

Specifically, the Government relies on §§ 1252(b)(9) and 1252(g). Section 1252(b)(9) limits "[j]udicial review of all questions of law and fact . . . arising from" any removal proceedings

to "judicial review of a final order" and further provides that no court shall have jurisdiction to review such order, including for habeas corpus relief under § 2241 or under the All Writs Act. 8 U.S.C. § 1252(b)(9).[2] Similarly, § 1252(g) provides that no court shall have jurisdiction to hear any claim "arising from" the Attorney General's "decision or action" relating to removal proceedings, including under §§ 2241 and 1651.[3]

The Court in *Elias* addressed this exact argument, namely that this Court lacks jurisdiction under § 1252. In *Elias*, the Court concluded that "the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), roundly rejected [the Government's] reading of § 1252(b)(9)" and that the

---

[2]   Section 1252(b)(9) provides in full:

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

[3]   Section 1252(g) provides in full:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter

8 U.S.C. § 1252(g).

**MEMORANDUM DECISION AND ORDER – 5**

analysis in *Jennings*, likewise, applies to § 1252(g). *Elias*, 2025 WL 3228262, at *3. The Supreme Court in *Jennings* ruled that an expansive interpretation of "arising from" removal proceedings in § 1252(b)(9) would "make claims of prolonged detention effectively unreviewable." *Id.* at 293. It reasoned that "by the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." *Id.* This Court agrees that *Jennings* forecloses the Government's jurisdictional challenges under both §§ 1252(b)(9) and 1252(g).

Finally, to the extent that the Government is challenging this Court's authority to prohibit Petitioner's transfer out of its jurisdiction, this Court again agrees with the analysis in *Elias* that it retains authority to restrict Petitioner's transfer. 2025 WL 3228262, at *4 (citing *Ozturk v. Hyde*, 136 F.4th 382, 394–96 (2d Cir. 2025); *Oliveros v. Kaiser*, No. 25- CV07117-BLF, 2025 WL 2677125, at *8–9 (N.D. Cal. Sept. 18, 2025)). Accordingly, although the Court has no jurisdiction to review Petitioner's removal proceeding, it has jurisdiction to prohibit his transfer and to review his challenge to detention without a bond hearing.

**B.   Venue is Proper in the District of Idaho**

The Government also challenges venue in this District. It argues this Court lacks venue because "Congress has restricted venue for challenges to 'determinations under [§] 1225(b)' to the United States District Court for the District of Columbia" (Dkt. 7 at 11). In support, the Government relies on 8 U.S.C. § 1252(e)(3). Section 1252(e)(3) is entitled "[c]hallenges on validity of the system" and provides that "judicial review under [§] 1225(b) . . . and its implementation is available" in the District of Columbia. § 1252(e)(3)(A). Section 1252(e)(3), however, limits the District of Columbia's judicial review to whether § 1225(b) or its

implementing regulations are constitutional and whether the Attorney General's implementing regulations, policies, and procedures violate the law. § 1252(e)(3)(A)(i), (ii).

Contrary to the Government's argument that § 1252(e)(3) mandates venue of this case in the District of Columbia, the Ninth Circuit has repeatedly explained that § 1252(e)(3) applies to "general" or "systemic constitutional challenges to the expedited removal statute or its implementing regulations." *United States v. Barragan-Camarillo*, 460 F. App'x 637, 639 (9th Cir. 2011); *see also United States v. Barajas-Alvarado*, 655 F.3d 1077, 1086 n.10 (9th Cir. 2011); *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1141 n.5 (9th Cir. 2008). In other words, § 1252(e)(3) applies to challenges to the expedited removal process itself, not to claims which precede and are collateral to that process, such as detention. *Mairena-Munguia v. Arnott*, No. 6:25cv3318-MDH, 2025 WL 3229132, at *2 (W.D. Mo. Nov. 19, 2025); *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 867 (S.D. Cal. 2019).

Here, Petitioner is not seeking to challenge § 1225(b)'s validity. Rather, he challenges "the legality and constitutionality of his own detention as applied to his unique circumstances" (Dkt. 9 at 4). Accordingly, § 1252(e)(3) is inapplicable, and venue is proper in the District of Idaho.

## C.   Section 1226(a) Governs Petitioner's Detention

Like the petitioner in *Elias* and the other cases in the District, Petitioner alleges his detention under § 1225(b)(2) without a bond hearing violates his due process rights. (Dkt. 1 at ¶¶ 32–33). In response, the Government argues Petitioner is properly detained under § 1225(b)(2) based on "the plain language of the statute" (Dkt. 7 at 13). In support, it argues that §1225(a)(1) provides that an unadmitted alien is deemed "an applicant for admission"; an applicant for admission "shall be detained" under § 1225(b)(2)(A); and because Petitioner "acknowledges being

**MEMORANDUM DECISION AND ORDER – 7**

in the country unlawfully and has never been lawfully admitted, he is subject to mandatory detention under [§] 1225(b)(2)" (Dkt. 7 at 3–4).

As Judge Winmill noted in *Elias*, countless courts have rejected the Government's interpretation of § 1225 because it (1) disregards § 1225(b)(2)(A)'s plain meaning; (2) disregards the relationship between §§ 1225 and 1226; (3) renders a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. 2025 WL 3228262, at *5 (quoting *Lepe v. Andrews*, No. 25-cv-01163, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025)) (collecting cases). For the reasons articulated in *Elias*, this Court rejects the Government interpretation of § 1225(b)(2) and concludes Petitioner's detention is governed by § 1226(a), not by § 1225.

In this case, the Government also argues that Petitioner is subject to "immediate removal" under § 1225(a)(4) (Dkt. 7 at 12–13). The provision is entitled "[w]ithdrawal of application for admission" and provides that "an alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). Relying on this provision, the Government argues Petitioner admits he has not sought admission and is not now seeking admission, and as a result, he is "an unlawfully present noncitizen who is not an applicant for admission [and] is subject to immediate removal" under § 1225(a)(4) (Dkt. 7 at 13).

The Government's argument fails for several reasons. First, as discussed above, § 1226 governs Petitioner's detention, not § 1225. For this reason, Petitioner is not "an applicant for admission" under § 1225—either for purposes of detention or of withdrawing an application for admission under § 1225(a)(4). Second, the plain meaning of § 1225(a)(4) does not support the

Government's argument. Rather, § 1225(a)(4) clearly provides that *an alien* may be permitted to withdraw an application for admission. The Government provides no authority, and the Court is not aware of any, that a noncitizen's long-term residency in the United States constitutes a withdrawal of an application for admission. Third, the Government's position is inconsistent with the Supreme Court's ruling in *Jennings* that § 1226 governs "aliens *already in the country*." *Jennings*, 583 U.S. at 289 (emphasis added).

**D.     Due Process**

Petitioner alleges his detention under § 1225(b)(2) violates his due process rights. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (citing cases). As the Supreme Court has repeatedly held, the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693 (citing cases).

To determine whether civil detention violates a detainee's procedural due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Mathews* requires the court to weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Weighing these factors, the Court concludes Petitioner has established a due process violation. First, the Government's detention affects Petitioner's private interest. Freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Here, the Government is detaining Petitioner under conditions indistinguishable from criminal incarceration; specifically, he is being detained in the Elmore County Detention Center in Mountain Home, a facility which also detains pretrial detainees and convicted criminals (Dkt. 1 at ¶ 18). Accordingly, Petitioner is "experiencing all the deprivations of incarceration, including loss of contact with friends and family, loss of income earning . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *Gunaydin v. Trump*, 784 F. Supp. 3d at 1175, 1187 (D. Minn. 2025).

Second, the Court must assess whether the challenged procedure creates a risk of erroneously depriving Petitioner of his private rights and the degree to which an alternative procedure could ameliorate that risk. *Id.* The Ninth Circuit has held that when a substantial liberty interest is at stake, the Government must prove by clear and convincing evidence that an individual poses a danger or flight risk before depriving him of liberty. *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011). Here, the Government has detained Petitioner without any individualized justification showing either that he poses a danger or a flight risk. Meanwhile, a bond hearing would allow Petitioner to receive a meaningful assessment of whether he is dangerous or likely to abscond and would greatly reduce the risk of an erroneous deprivation.

Third, civil detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690. Here, the Government identifies no information establishing Petitioner

poses a danger or flight risk. Accordingly, all three *Mathews* factors weigh in favor of finding Petitioner's due process rights have been violated and ordering his release.

The Government does not dispute the *Mathews* factors weigh in favor of Petitioner. Indeed, it does not address the *Mathews* test at all. Instead, it argues that "granting a writ of habeas corpus to a noncitizen who is not seeking admission so that he can be released to live unlawfully without bother would extend the writ of habeas corpus beyond its scope" and that "if an alien unlawfully present is not seeking lawful admission or status, there is no need for detention 'pending a decision' on removal . . . because the alien is not seeking admission and must be removed immediately" (Dkt. 7 at 13, 17). In support, the Government cites *DHS v. Thuraissigiam,* 591 U.S. 103 (2020).

*Thuraissigiam*, however, does not support the Government's argument. In that case, Thuraissigiam "crossed the southern border without inspection or an entry document," was apprehended "within 25 yards of the border," and sought asylum by claiming a fear of returning to Sri Lanka. *Id.* at 114. After his request for asylum was denied, he filed a federal habeas petition. *Id.* Addressing Thuraissigiam's rights under the Due Process Clause, the Court reiterated the "century-old rule" that an alien seeking initial entry into the United States, such as Thuraissigiam, does not have due process rights. *Id.* at 139. Here, Petitioner's due process claim is distinguishable because he has lived in the United States for almost ten years and was not apprehended at the border upon entry. Under these circumstances, Petitioner has due process rights.

Further, as Petitioner notes, the Government's argument mischaracterizes Petitioner's requested remedy (Dkt. 9 at 8-9). Petitioner's requested remedy is release from detention (*id.*). In contrast, the Government mischaracterizes Petitioner's requested relief as relief from removal because he is seeking "outright release to continue living unlawfully" and "without bother" (Dkt. 7

**MEMORANDUM DECISION AND ORDER – 11**

at 13, 14 n.3). Simply releasing Petitioner, however, does not provide him with a right to stay in the country unlawfully. *See Thuraissigiam*, 591 U.S. at 119 (noting noncitizens remain subject to arrest, detention, and removal despite release under § 1226(a)). As Petitioner notes, he will remain subject to removal proceedings but entitled to apply for relief from removal (Dkt. 9 at 9).

**E.     Remedy**

Having concluded the Government has violated Petitioner's due process rights, the Court must determine the proper remedy. Petitioner requests the Court order his immediate release, but the Government argues he should only receive a bond hearing under § 1226(a).

A district court has equitable discretion under § 2254 to remedy unlawful detention "as law and justice require." *Brown v. Davenport*, 596 U.S. 118, 127-28 (2022). Despite this discretion, however, relief "should be no more burdensome" than necessary to provide the petitioner "complete relief." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). Thus, relief "must be narrowly tailored to remedy the specific harm shown." *Id.* at 107.

As Judge Winmill noted in *Elias*, "in many circumstances akin to the present case, a bond hearing would indeed be sufficient to rectify the violation of Petitioner's unlawful detention." 2025 WL 3228262-RFB-BNW, at *9 (citing *E.C. v. Noem*, No. 2:25-cv-01789, 2025 WL 2916264, at *12 (D. Nev. Oct. 14, 2025); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 45-46 (1st Cir. 2021)). Here, however, the Government has failed entirely to identify any legitimate interest in detaining Petitioner—just as it did in *Elias*. *See Mathews*, 424 U.S. at 335 (requiring consideration Government's interest).

Indeed, the Government did not address Petitioner's alleged due process violation at all. For that reason, there is no evidence Petitioner poses a flight risk or poses a danger to the

community. To the contrary, his lack of a serious criminal record, almost ten-year residency in the United States, and his familial ties in the United States all indicate that he neither poses a danger nor a flight risk.

As Judge Winmill noted in *Elias*, "courts across the country have ordered the immediate release of detainees in similar situations." 2025 WL 3228262, at *9 (citing cases). Like Judge Winmill, this Court concludes that absent any legitimate interest in Petitioner's detention, his immediate release is the appropriate remedy for the Government's violation of his due process rights by detaining him without a bond hearing. *See id.* (citing *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13-14 (W.D. Tex. Oct. 2, 2025)). Accordingly, the Court grants Petitioner's petition for habeas corpus relief and orders his immediate release from custody.

## ORDER

IT IS HEREBY ORDERED that:

1. Petitioner's Petition for Habeas Relief Under 28 U.S.C. § 2241 (Dkt. 1) is **GRANTED**.

2. Petitioner's Motion for Temporary Restraining Order (Dkt. 2) is **DENIED as MOOT**.

DATED: December 29, 2025

Amanda K. Brailsford
U.S. District Court Judge